# In the United States Court of Federal Claims

No. 15-555V
(Filed: January 5, 2018)*
*Opinion was originally filed under seal on December 18, 2017

| | |
|---|---|
| SABRINA SANTACROCE, on Behalf of her Minor Child, J.R., <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Vaccine Act; Attorneys' Fees and Costs; Reasonable Basis for Filing Petition |

*Andrew D. Downing*, Phoenix, AZ, for petitioner.

*Sarah C. Duncan*, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *C. Salvatore D'Alessio*, Acting Director, Torts Bramch, *Catherine E. Reeves*, Deputy Director, Torts Branch, and *Heather L. Pearlman*, Assistant Director, Torts Branch, for defendant.

**OPINION REVERSING
DENIAL OF ATTORNEYS' FEES AND COSTS**

**FIRESTONE**, *Senior Judge*.

This case comes before the court on petitioner Sabrina Santacroce's ("petitioner") motion for review of Special Master Laura D. Millman's decision denying award of $34,618.68 in attorneys' fees and costs to Andrew D. Downing ("counsel"), who filed a petition under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1

to -34 (the "Vaccine Act") on behalf of the petitioner, who filed on behalf of her minor child, J.R. Santacroce ("J.R."). In addition petitioner seeks review of Special Master Millman's decision denying petitioner's motion for reconsideration.

The petitioner alleged in her petition that J.R. developed dystonia musculorum deformans as a result of receiving the Varivax, Prevnar, and Hepatitis A vaccinations on March 8, 2013 and the diphtheria, tetanus, and pertussis ("DTaP"), Inactivated Poliovirus Vaccine ("IPV"), haemophilus influenza type B ("HiB"), and Hepatitis B vaccinations on August 13, 2014. (ECF No. 1). On December 1, 2016, 18 months after the petition was filed, Special Master Millman granted petitioner's motion for a decision dismissing petition. (ECF Nos. 30 and 31).

On January 23, 2017, petitioner filed a motion for attorneys' fees and costs. (ECF No. 36). The government objected to an award of attorneys' fees and costs on the grounds that counsel did not have a reasonable basis for filing the petition. (ECF No. 37). Special Master Millman denied an award of attorney's fees and costs on July 14, 2017. (ECF No. 38). The petitioner filed a motion for reconsideration on July 17, 2017, which Special Master Millman denied on August 8, 2017. (ECF Nos. 39 and 42). On August 14, 2017 the petitioner filed the pending motion for review of the Special Master's decisions which denied an award of attorneys' fees and costs. (ECF No. 43).

For the reasons stated below, the court finds that Special Master Millman applied a too burdensome standard in evaluating the claim for fees and costs and thus her decision was not in accordance with law. Accordingly, for the reasons discussed below, the court

**GRANTS** the petitioner's motion, **VACATES** the Special Master's decisions, and **REMANDS** this matter for further consideration consistent with the court's opinion.

## I.     BACKGROUND

### A.     Facts

J.R. was born on July 1, 2011, four weeks premature and spent five days in the neonatal intensive care unit.  Petitioner's Exhibit ("Pet'r's Ex.") 9 at 243-44.  On April 27, 2012, J.R. went to his pediatrician, Dr. Sharad Vyas, for his nine-month check-up and received his third DTaP, third IPV, third Prevnar, second Hepatitis B, and third HiB vaccinations.  Pet'r's Ex. 3 at 5.  Subsequently, on May 5, 2012, J.R. was taken to the emergency room because he had abdominal pain and had vomited three times within twenty-four hours.  Pet'r's. Ex. 8 at 21-22.  He was discharged with a diagnosis of vomiting, rash, and constipation.  *Id.* at 22, 184.  Over the course of the next year, J.R. had several visits with Dr. Vyas due to various illnesses ranging from abdominal pain to bronchitis.  Pet'r's Ex. 9 at 87-94, 155-67, 195-200, 205-06.

On March 8, 2013, during J.R.'s 18-month check-up with Dr. Vyas, J.R. received his fourth Prevnar, first Hepatitis A, and first Varivax vaccinations.  Pet'r's Ex. 2 at 2.  During the visit, Dr. Vyas noted that J.R.'s growth and development were normal.  Pet'r's Ex. 9 at 148-52.  On March 11, 2013 and March 14, 2013, J.R. presented to Dr. Vyas with reports of a fever and cold symptoms, which J.R.'s mother believed were related to the recent vaccinations.  *Id.* at 73-77.  On May 7, 2013, J.R. went to the emergency room with vomiting and upper respiratory infection symptoms.  Pet'r's Ex. 4 at 104-05, 127.  On May 10, 2013, J.R. went to Dr. Vyas for a follow-up where he was

3

diagnosed with a Coxsackie virus infection, viral exanthema, and fever. Pet'r's Ex. 9 at 70-72. On July 30, 2013, J.R. presented to Dr. Vyas for a sick visit where the petitioner reported that for the past few months, J.R. had been straightening his legs and rolling his tongue for hours. *Id.* at 63-64. On August 1, 2013, J.R. again visited Dr. Vyas complaining of tongue twisting and leg straightening. *Id.* at 61-62.

On August 14, 2013, J.R. received his fourth DTaP, fourth HiB, and third Hepatitis B vaccinations. Pet'r's Ex. 3 at 5. On August 30, 2013, J.R. reported to Dr. Vyas' office complaining of leg straightening and arm twisting. Pet'r's Ex. 9 at 53-55. It was at this visit that Dr. Vyas diagnosed J.R. with dystonia musculorum deformans. *Id*. Dr. Vyas noted that the petitioner requested that he complete a Vaccine Adverse Event Reporting System ("VAERS") report. *Id.* On September 6, 2013, Dr. Vyas' office submitted a VAERS report that indicated that J.R. was experiencing abnormal movements and seizure-like symptoms after receiving his August 14, 2013 vaccinations. Pet'r's Ex. 12.

On September 24, 2013, J.R. presented to Dr. Laufey Sigurdardottir, a pediatric neurologist, who conducted a neurological exam that concluded that J.R. had normal neurological functions and that she could not characterize J.R.'s symptoms because she did not witness any involuntary movements during the appointment. Pet'r's Ex. 6 at 13-15.

On October 8, 2013, after an appointment with Dr. Vyas, J.R. was referred to a rheumatologist. Pet'r's Ex. 9 at 47-49. On November 25, 2013, J.R. again visited Dr. Vyas due to abnormal movements. *Id.* at 41-43. On November 26 and 27, 2013, J.R.

was admitted to the hospital where a 24-hour electroencephalogram ("EEG") and magnetic resonance imaging ("MRI") were conducted. Pet'r's Ex. 7 at 7-10. The results of the MRI were normal except a small temporal tip arachnoid cyst and the attending physician noted that J.R's symptoms were more likely the result of behavioral issues. *Id.* at 11, 73.

Again, on December 4 and 5, 2013, J.R. was admitted to the hospital for a 23-hour EEG which was normal throughout. Pet'r's Ex. 6 at 48-50. The treating doctor, Dr. Christine Martarese, noted that she believed that the movements were voluntary and were not the result of dystonia. *Id.*

On December 18, 2013, J.R. presented to pediatric rheumatologist Dr. Akaluck Thatayatikom who, although noting a brief episode of tongue movement, concluded that the exam was normal and recommended that J.R. see a behavioral specialist. *Id.* 80-83. On March 10, 2014, J.R. presented to Dr. Vyas for a sick visit where he noted that J.R. stuck his tongue out and hyperextended his fingers. Pet'r's Ex. 9 at 2-4. Dr. Vyas noted that he still considered dystonia musculorum deformans to be the cause of J.R.'s symptoms. *Id.* at 3.

On June 9, 2014, J.R. obtained a new pediatrician, Dr. Kaneez Agha, who during J.R.'s visit reported a normal exam but noted the need to rule out autism, Sydenham chorea, and Rett syndrome. Pet'r's Ex. 3 at 6-9. Dr. Agha ordered among other things a psychology consult. *Id*. On June 18, 2014, J.R. presented to Dr. Shelia Ramos, a pediatric neurologist, for an evaluation. Pet'r's Ex. 5 at 4-5. Dr. Ramos noted that J.R.'s EEG and electromyogram test and nerve conduction study were normal. J.R. returned to

Dr. Ramos on July 30, 2014. *Id.* at 2-3. Dr. Ramos noted that J.R.'s bloodwork was normal and that J.R. had an "episode" in the office, which she stated "seemed more consistent with a temper tantrum." *Id.*

On August 27, 2014, J.R. had an appointment with Dr. Agha where he complained of abdominal pain, ankle pain, and pain behind the ear. Pet'r's Ex. 3 at 12-13. No additional medical records dated after August 27, 2014 were submitted by the petitioner.

### B.     Procedural Background

#### i.     Petition and Special Master's Decision on the Merits

According to the petitioner's Application for Final Attorney's Fees and Costs, on August 11, 2014, petitioner retained the law firm of Van Cott & Talamante regarding her son J.R.'s alleged adverse response to two groups of vaccines received on March 8, 2013 and August 14, 2013. (ECF No. 36). On June 1, 2015, petitioner filed her petition alleging that these two rounds of vaccinations caused and exacerbated J.R.'s involuntary muscle movement and dystonia. (ECF No. 1).

Subsequent to filing the petition, petitioner filed several exhibits in support of her petition. (ECF No. 7). These exhibits included a sworn statement by the petitioner outlining the history of J.R.'s vaccinations and her observations of the symptoms subsequent to those vaccinations, J.R's vaccination chart, and J.R.'s medical records, including Dr. Vyas' diagnosis of dystonia musculorum deformans on August 30, 2013 and his reaffirmation of the diagnosis on March 10, 2014. *Id.*

On June 26, 2015, Special Master Millman issued an order after reviewing the evidence submitted by the petitioner. (ECF No. 8). In the order, Special Master Millman

raised several concerns about the petitioner's case. Specifically, she explained that from her review of the record it appeared that J.R.'s abnormal behavior began to occur in May 2012, one week after J.R's April 27, 2012 vaccinations. *Id*. As such Special Master Millman suggested that if the injury occurred in April 2012, the petitioner was outside the statute of limitations and that "[p]etitioner may choose to amend her petition to allege that J.R.'s March 8, 2013 and August 14, 2013 vaccinations significantly aggravated whatever condition he has." *Id.* at 1. In the same order, Special Master Millman expressed concern that dystonia musculorum deformans is a hereditary type disease, citing Dorland's Illustrated Medical Dictionary. *Id.* at 1-2. She also expressed concern that "[e]xtensive neurologic examination and a prolonged EEG resulted in the conclusion that J.R. was normal neurologically, had normal development milestones, and did not have seizures." *Id.* at 1.

Subsequent to Special Master Millman's June 26, 2015 order on September 6, 2015, the petitioner submitted the VAERS report filed by Dr. Vyas' office, which identified J.R.'s involuntary muscle movements as an adverse event following his August 2013 vaccinations. (ECF No. 13-1). Petitioner requested and received several extensions of time to submit additional materials from Dr. Vyas about J.R.'s diagnosis with dystonia musculorum deformans and to obtain an expert opinion regarding causation. (ECF Nos. 17-21).

On March 25, 2016, the petitioner filed an email from Dr. Vyas' attorney to petitioner's counsel, which stated, "We have reviewed the chart and there is no additional VAERS correspondence, submissions, etc. that we can find. [] You were correct that Dr.

7

Vyas was not implying any statement of cause with the diagnosis of Dystonia Musculorum Deformans." (ECF No. 22-1).

On April 14, 2016, Special Master Millman issued an order explaining that the VAERS report was insufficient to "support causation sufficiently to meet petitioner's burden" and ordered the petitioner to file an expert report from a neurologist by June 13, 2016. (ECF No. 23). Petitioner subsequently made five successive motions for extensions of time to either file an expert report or a status report explaining how the petitioner wished to proceed. (ECF Nos. 24-28).

On December 1, 2016, petitioner filed a Motion for Decision Dismissing Petition. (ECF No. 30). In the motion, the petitioner "recognize[d] that she will likely be unable to meet her burden of proof as to scientific and medical causation under the record as it exists and/or establish that J.R. is entitled to compensation under the Vaccine Program" and thus requested the court dismiss the petition. *Id.* On December 1, 2016, Special Master Millman granted the petitioner's Motion for a Decision Dismissing Petition and dismissed the case. (ECF No 31).

      ii.      Motion for Attorneys' Fees and Costs

On January 23, 2017, the petitioner filed a motion for attorneys' fees and costs. (ECF No. 36). The petitioner argued that she brought the petition in good faith and, based on the record, had a reasonable basis for filing the petition. *Id.* Specifically, the petitioner explained that her petition was supported by the evidence of the vaccinations, a VAERS report, and documented symptoms of a possible reaction to the vaccinations in 2013, as evidenced in the various medical records provided to the Special Master. *Id.*

The petitioner explained that dystonia muscolorum deformans is not solely a genetic condition but can also be acquired from "environmental or other toxicological damage to the brain." *Id.* (citing Dystonias Fact Sheet, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Dystonias-Fact-Sheet.)

On February 9, 2017, the government filed a response arguing that the petitioner did not have a reasonable basis for filing the petition. (ECF No. 37). Specifically, the government relied on the June 26, 2015 order where Special Master Millman raised her concerns about proceeding with the case. *Id.* (citing ECF No. 8 at 2).

        iii.    Special Master's Decision Denying Award of Attorneys' Fees and Costs

On July 14, 2017, Special Master Millman issued an opinion denying the entirety of the $34,618.68 counsel had requested in fees and costs. Attorneys' Fees and Costs Decision ("Fee Dec."), (ECF No. 38). Special Master Millman noted that the Vaccine Act allows a Special Master to award attorneys' fees and costs to an unsuccessful petitioner so long as the petition was filed in good faith and there was a reasonable basis for the claim. *Id*. at 3 (quoting 42 U.S.C. § 3000aa-15(e)(1); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013)).

Special Master Millman found that the petitioner had satisfied the good faith requirement. *Id*. at 4 (citation omitted). However, Special Master Millman determined that the petitioner did not have a reasonable basis to bring her claim. *Id*. at 4-5. First, Special Master Milliman concluded that even if J.R. suffered an adverse reaction to a

9

vaccination it appears to have occurred shortly after his April 2012 vaccinations not his March and August 2013 vaccinations. *Id*. at 4.

Next, Special Master Millman determined that J.R.'s alleged vaccine reaction "may have been attributable to behavioral problems" and not an adverse reaction to a vaccination. *Id*. Finally, Special Master Millman noted that "besides a VAERS report, there is little evidence that J.R. had an adverse reaction to his August 14, 2013 vaccinations that lasted more than six months. *Id*. In discounting the VAERS report Special Master Millman relied on *Manville v. Sec'y of Health and Human Servs.*, 63 Fed. Cl. 482 (2004), to conclude that a VAERS report is insufficient to support both causation and a reasonable basis for filing a petition. *Id*. at 4 n. 2.

> iv.     Motion for Reconsideration

On July 17, 2017, the petitioner filed a motion for reconsideration arguing that Special Master Millman did not give proper weight to petitioner's affidavit, the VAERS report, or J.R.'s medical records. (ECF No. 39).

On August 8, 2017, Special Master Millman issued an order denying the petitioner's motion for reconsideration. (ECF No. 42). Special Master Millman concluded that she had already evaluated the evidence in the record, which contained the evidence the petitioner cited, and as such found that petitioner was only reasserting arguments already made and therefore denied the motion for reconsideration. *Id.* at 3.

The petitioner subsequently sought review of the Special Master's decisions in this court. (ECF No. 43). Briefing was completed on September 25, 2017 and oral argument was held on December 12, 2017.

## II. STANDARD OF REVIEW

This court may reverse a decision of a Special Master if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 42 U.S.C. § 300aa-12(e)(2)(B); s*ee also Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). The "decision whether a particular petition was brought in good faith and had a reasonable basis at the time of filing, and therefore that counsel would be entitled to attorneys' fees, is within the discretion of the special master and is generally reviewed for abuse of discretion." *Scanlon v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 629, 633 (2014) (citing *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 633 (2012) (internal citations omitted)). The "'[n]ot in accordance with the law' refers to the application of the wrong legal standard, and the application of the law is reviewed *de novo*." *Simmons*, 875 F.3d at 635 (quoting *Rodriguez v. Sec'y of Health and Human Servs.*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011) (citing *Avera v. Sec'y of Health and Human Servs.,* 515 F.3d 1343, 1347 (Fed. Cir. 2008)).

## III. DISCUSSION

### A. Legal Framework of the Vaccine Act

Under the Vaccine Act, an unsuccessful petitioner may be awarded attorneys' fees and costs under certain circumstances: "If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or

court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1).

Good faith and reasonable basis are "two distinct facets" that must be judged separately. *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014). Moreover, while good faith is a subjective inquiry, the question of whether there was a reasonable basis for the claim is an objective inquiry. *Id.* (citing *McKellar v. Sec'y Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011)).

Recently, the Federal Circuit confirmed that reasonable basis is determined on an objective standard. *Simmons*, 875 F.3d at 636. In *Simmons*, the Federal Circuit determined that an impending statute of limitations is not relevant to determining if there was sufficient support for the claim itself in the records submitted by the petitioner. *Id.* The petitioner "must furnish some evidence in support" of the claim "to establish the statutory requirements for reasonable basis." *Chuisano,* 116 Fed. Cl. at 288 (citing *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 152 (2012)); *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted only one affidavit and no other record); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

The burden has been satisfied by petitioners where a petitioner has submitted a sworn statement, medical records and VAERS report which show that recovery is feasible. *Turner v. Sec'y Health & Human Servs.,* No. 99-544V, 2007 WL 4410030, *6

(Fed. Cl. Spec. Mstr. Nov. 30, 2007) (citing *Di Roma v. Sec'y of Dept. of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

### B. Parties Arguments

#### i. Petitioner's Argument

The petitioner asserts that Special Master Millman abused her discretion by applying an overly-burdensome reasonable basis standard when considering her motion for attorneys' fees and costs. Pet'r's Mem. of Obj. in Supp. of Mot. for Review (Pet'r's Mem.) at 3. Specifically, the petitioner maintains that Special Master Millman applied "an elevated entitlement standard, not a reasonable basis standard." *Id.*

First, the petitioner argues that if Special Master Millman had applied the correct standard, the petitioner had clearly provided sufficient evidence to have a reasonable basis for filing the petition. *Id.* at 4-9. Specifically, the petition points to: "1) [her] under-oath affidavit; 2) contemporaneous medical records documenting the onset of J.R.'s condition to establish a temporal relationship; 3) medical records documenting the concern that the symptoms were vaccine related; and 4) a VAERS report submitted by J.R.'s treating physician." *Id.* at 4 (emphasis removed).

Next, petitioner maintains that in evaluating if there was a reasonable basis for filing the petition, Special Master Millman improperly assumed that the claim should have been brought earlier to reflect that J.R. suffered adverse reactions to his April 2012 vaccinations, despite the allegation in the petition that it was not until after his 2013 vaccinations that J.R. suffered adverse muscle reactions and was diagnosed with

13

dystonia. *Id.* at 5 n.2. Petitioner also maintains that Special Master Millman improperly focused on medical records that indicated normal neurological test results to suggest that J.R.'s symptoms were behavioral without regard to Dr. Vyas' initial diagnosis of dystonia and subsequent reaffirmation of this diagnosis more than 6 months later. *Id.* at 8.

The petitioner also argues that Special Master Millman improperly discounted the petitioner's affidavit which supported both the existence of J.R.'s symptoms and their proximity in timing to his March and August 2013 vaccinations. *Id.* at 9. Specifically, petitioner relies on the court's recent decision in *Cottingham v. Sec'y of Health & Human Servs.,* where the court found that Special Master Millman applied too high "a burden on counsel at the pleading stage" when he discounted the sworn statement of the petitioner and the medical records that supported the petition. 2017 WL 4546579 at *7.

Finally, petitioner argues that Special Master Millman failed to give proper weight to the VAERS submission. *Id.* at 10-11. Specifically the petitioner argues that Special Master Millman improperly relied on *Manville v. Sec'y of Health and Human Servs.*, 63 Fed. Cl. 482, 494 (2004), when she discounted the VAERS report. *Id.* The petitioner points out that *Manville* was a decision on the merits of a vaccine petition where the court found that VAERS reports alone cannot support a finding of a causal relationship between a vaccine and alleged injury. *Id.* at 10. The petitioner argues, regardless of whether VAERS reports can alone support a causation finding, VAERS reports have previously been found adequate to support a reasonable basis for filing a petition. Pet'r's Resp. to Court Order (citing *Turner v. Sec'y Health and Human Servs.,* 2007 WL 4410030, *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

14

ii. Government's Argument

The government argues that Special Master Millman did not abuse her discretion when she determined that the petitioner was not entitled to attorneys' fees and costs. Resp't Mem. in Resp. to Pet'r's Mot. for Review (Resp't Mem.). The government argues that under the recent precedent established by the Federal Circuit in *Simmons*, the court should apply an objective test to determine if there was a reasonable basis for the claim as opposed to determining if there was a reasonable basis for filing the petition. *Id.* at 14. The government asserts that Special Master Millman properly concluded that the petitioner did not have a reasonable basis for filing the petition because if J.R. did have a negative reaction to a vaccine it would have first occurred after his April 27, 2012 vaccinations and not after the March and August 2013 vaccinations as the petitioner maintained. *Id.* at 16.

The government also argues that Special Master Millman properly considered all evidence submitted by the petitioner and reasonably concluded that there was little evidence to support the diagnosis of dystonia musculorum deformans or that J.R. had an adverse reaction to the vaccinations. *Id.* at 15-17. The government notes that the "evidentiary deficiencies were significant enough to prompt the Special Master, within one month of the claim's filing, to raise concerns regarding the lack of support for the petitioner's allegations and directed petitioner to consider whether it was reasonable to proceed." *Id.* at 15 (citing Order, ECF No. 8 at 2).

Finally, the government argues that the Special Master gave proper weight to evidence of an adverse reaction to the 2013 vaccinations that consisted solely of the

petitioners own reports of J.R.'s symptoms. *Id.* In this connection, the government maintains that Special Master Millman properly discounted the VAERS report. *Id.* at 15-16. The government argues that the VAERS report was not sufficient on its own because it was filed at the urging of the mother. *Id.*

      iii.      The Special Master Applied the Incorrect Legal Standard

The sole issue before the court is whether Special Master Millman abused her discretion by applying too stringent a standard in finding that counsel did not have a reasonable basis for filing the petition.[1]

The court agrees with the petitioner that in deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. Under the Vaccine Act, the petitioner must allege that (1) the vaccine was administered in the United States; (2) the vaccinee suffered an injury from the vaccination lasting more than 6 months; (3) the injury is linked to the vaccination and, (4) the petitioner has not been compensated. *Turner,* 2007 WL 4410030 at *7 (citing 42 U.S.C. § 300aa-11(c)(1)).

Under the objective standard articulated by the Federal Circuit in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted. Specifically, the Special Master should have focused her review on the evidence submitted to show that (1) J.R.

---

[1] It is not disputed that petitioner filed her petition in good faith.

received the 2013 vaccinations, (2) had experienced symptoms temporally related to the 2013 vaccinations, (3) had received a diagnosis of dystonia which was reaffirmed, and (4) had a doctor willing to file a VAERS report.

By focusing on the vaccinations in 2012 which did not result in dystonia symptoms and ignoring the diagnosis of dystonia relied upon by the petitioner, the Special Master appears to have engaged in weighing the evidence of petitioner's claim rather than deciding if the claim was feasible. In this connection, the court notes that the Special Master had earlier concluded that dystonia is solely a hereditary disease (which apparently it is not) and that J.R. may be suffering only from behavioral issues.

In addition, the Special Master's decision to discount the VAERS report as evidence of causation in combination with the temporal relationship of a reaction is not consistent with similar cases where "evidence of petitioner's receipt of the vaccinations and evidence that his mother filed a VAERS claim reporting petitioner's alleged vaccine injury" were found to be "sufficient to establish the reasonable basis requirement." *Turner,* 2007 WL 4410030, *11.

## CONCLUSION

For the reasons stated above, the petitioner's motion for review is **GRANTED.** The Special Master's decisions are **VACATED**. This case is **REMANDED** so that the Special Master may consider the petitioner's motion for attorneys' fees and costs consistent with the court's opinion. The Special Master shall perform their re-evaluation within **90 days**, in accordance with Vaccine Rule 28(b).

**IT IS SO ORDERED**.

                                            s/Nancy B. Firestone  
                                            NANCY B. FIRESTONE  
                                            Senior Judge